UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL CHERRY BLOSSOM<br>FESTIVAL, INC.<br>1250 H Street, NW<br>Suite 1000<br>Washington, DC 20005<br><br>     Plaintiff,<br><br>v.<br><br>RIFLE, INC. d/b/a RIFLE PAPER CO.<br>558 W. New England Avenue<br>Suite 150<br>Winter Park, FL 32789<br><br>SERVE ON:<br><br>JAMES N. BOND<br>558 W. New England Avenue<br>Suite 150<br>Winter Park, FL 32789<br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____<br><br><br>(Trial By Jury Demanded) |

## COMPLAINT

Plaintiff, National Cherry Blossom Festival, Inc. ("NCBF"), by its undersigned counsel, files this Complaint against Rifle, Inc. d/b/a Rifle Paper Company ("Rifle" or "Defendant") for trademark infringement and related claims, an in support thereof, states as follows:

## INTRODUCTION

1.      This is an action for trademark infringement and dilution arising under the laws of the United States (Federal Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.*).

2.      NCBF is a not-for-profit corporation that owns certain federal trademark registrations and common law trademark rights, including NATIONAL CHERRY BLOSSOM

FESTIVAL® (the "Mark").  Defendant distributes and sells certain goods bearing the Mark without the authorization of NCBF.

## PARTIES

3.      Plaintiff NCBF is a not-for-profit corporation organized and existing under the laws of the District of Columbia with its principal place of business in Washington, D.C.  NCBF is the owner of federal trademark registrations and common law trademark rights in various trademarks at issue in this matter.

4.      Defendant is a corporation organized under the laws of Florida with its principal place of business in Winter Park, Florida that distributes a wide variety of products, including calendars, gift cards, gift wrap, notepads, phone cases, planners and stationary, through retailers located throughout the country, including in the District of Columbia, and directly to consumers, including residents of the District of Columbia, on its website at www.riflepaperco.com.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under Section 39 of the Trademark Act of 1946, 15 U.S.C. 1121 (the "Lanham Act"), and under 28 U.S.C. §§ 1331, 1332 and 1338.

6.      This Court has personal jurisdiction over Defendant because Defendant conducted and continues to conduct business in the District of Columbia by selling the infringing merchandise at issue in this action within this Judicial District, either to retailers or directly to consumers.

7.      This District is a proper venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Defendant's sale of merchandise at issue.  Further, Defendant's improper actions, both within and outside this District, gave rise to NCBF's injuries that occurred within this District.

## FACTS COMMON TO ALL COUNTS

8.      NCBF organizes, operates and manages the annual National Cherry Blossom Festival, a world-famous spring celebration focusing on the blooming of the famous cherry tree blossoms in Washington, D.C.   The National Cherry Blossom Festival commemorates the historic gift of 3,000 Japanese cherry trees from the mayor of Tokyo City, Japan to Washington, D.C. to symbolize the relationship between those cities' respective countries.  The gift resulted in nearly 4,000 Japanese cherry trees being planted around Washington, D.C., in particular, in the area surrounding the Tidal Basin and Jefferson Memorial.

9.      As many as 1.5 Million visitors or more travel to the Washington, D.C. Tidal Basin each year to view the cherry trees in bloom and to participate in the National Cherry Blossom Festival.

10.      The National Cherry Blossom Festival is a four-week long ecological and cultural celebration featuring a number of events, exhibits, and performances related to the cherry blossoms and U.S.-Japanese relations.  Among the festival events and activities are the National Cherry Blossom Festival Parade®, fireworks, live concerts, and special exhibits that take their theme from the famous cherry blossoms.

### A.  NCBF's Ownership and Continuous Use of the Mark

11.      NCBF is the owner of all rights, title and interest in and to a family of seven (7) federal trademark registration and common law marks, including NATIONAL CHERRY BLOSSOM FESTIVAL®, NATIONAL CHERRY BLOSSOM FESTIVAL PARADE® and related trademarks, service marks, distinctive design marks and logos.

12.      Long prior to the acts complained of herein, NCBF began using the Mark in connection with the annual National Cherry Blossom Festival, its advertising, and the marketing and sale of a variety of products commemorating the festival.  Over the years, NCBF has spent a

vast amount of resources developing and marketing the NATIONAL CHERRY BLOSSOM FESTIVAL name. As a result, the Mark has become famous and acquired a significant amount of distinctiveness and goodwill.

13.     On or about August 27, 2007, NCBF filed an application with the United States Patent and Trademark Office (USPTO) for registration of the Mark in International Class 041. The application identified NCBF's date of first use of the Mark in interstate commerce as December 31, 1985.

14.     The USPTO registered the Mark on its Principal Register on February 24, 2009. A copy of Registration Certificate No. 3,578,569 is attached as *Exhibit A*.

15.     The foregoing registration is in full force and effect, unrevoked and uncancelled, and is incontestable.

16.     NCBF's registration of the Mark conclusively demonstrates the validity and subsistence of the Mark as well as NCBF's exclusive right to use the Mark in commerce. The aforementioned registration further provides constructive notice of NCBF's exclusive ownership rights in the Mark.

17.     Long prior to the acts complained of herein, NCBF widely publicized the Mark both throughout the United States and internationally. Such marketing continues to this day. As a result of NCBF's long, continuous and exclusive use of the Mark, the Mark has acquired secondary meaning in the minds of the general public. Indeed, the Mark is now famous.

18.     The general public has come to recognize the distinctive NATIONAL CHERRY BLOSSOM FESTIVAL trademark and associate that name with NCBF. As a result, NCBF has developed a significant amount of goodwill in association with its use of the Mark.

19.     NCBF's website contains the following notice regarding third party use of NCBF's several trademarks:

4

We own the Website, our name, NATIONAL CHERRY BLOSSOM FESTIVAL®, NATIONAL CHERRY BLOSSOM FESTIVAL PARADE® and related trademarks, service marks, designs and logos that we use on the Website and in commerce (collectively "Properties").

Unless we give you written permission, you may not copy, sell, trade, use or allow others to use these Properties.

20.    NCBF has licensed the Mark to third parties to sell a variety of products, including clothing, posters, and stationery, that reflect the annual National Cherry Blossom Festival and its numerous events surrounding the blooming of Washington, D.C.'s famous cherry blossom trees.

21.    Defendant has never contacted NCBF to request permission to use the Mark, nor has NCBF authorized Defendant to use the Mark, or any similar mark, in any manner.

**B.  Defendant's Unlawful Use of NCBF's Mark**

22.    Defendant is an international stationery and lifestyle brand based in Winter Park, Florida.

23.    Defendant produces, markets and sells a variety of products featuring hand-painted illustrations including greeting cards, art prints, calendars, planners, stationery, phone cases, and other products.

24.    Defendant distributes its products widely in various major outlets throughout the United States, including Anthropologie, Paper Source, Papyrus, and other retail outlets.  In addition, like NCBF, Defendant advertises its products through the Internet.  In that regard, Defendant operates a website at www.riflepaperco.com through which it sells its products, including products depicting NCBF's Mark.

25.    Defendant's products have also been featured in lifestyle publications with large national and international distributions including Martha Stewart Living, O The Oprah Magazine, Southern Living, InStyle, Lucky and Real Simple Wedding magazines.

26.     Notwithstanding NCBF's prior use of, and rights in, the Mark and other distinctive NCBF design marks and logos, in July 2016, NCBF learned that Defendant was selling art prints and stationery (the "Infringing Products") bearing unauthorized and unlicensed reproductions of NCBF's Mark.

27.     Defendant's Infringing Products include art prints, stationery notes and cards that have been, and continue to be, widely marketed and distributed to the public.  Defendant's Infringing Products feature artwork depicting the Tidal Basin and the Jefferson Memorial, framed by cherry blossom trees in full bloom.  The artwork is prominently captioned by the Mark in the same distinctive Corinthia typeface NCBF has used and continues to use to depict its Mark on the NCBF website and elsewhere.  Defendant's infringing use of the Mark evokes a much broader concept than the artwork – it evokes the annual spring festival organized, operated and managed by NCBF.

28.     By way of example, Paper Source, a national retail outlet has sold and continues to sell Defendant's Infringing Products, including the art print described above.  Paper Source describes Defendant's art print as follows:

> This illustrated art print from Rifle Paper Co. originates from an original Gouache painting by artist Anna Bond. The print captures the spirit of the Cherry Blossom Festival in Washington, D.C. in her trademark colorful and whimsical style.

29.     Paper Source's aforementioned description of Defendant's art print demonstrates that Defendant is trading on the goodwill of NCBF to induce consumers to believe that Defendant's Infringing Products, are licensed, sponsored, endorsed or approved by, or affiliated with, NCBF.   True and correct examples of Defendant's Infringing Products bearing the "NATIONAL CHERRY BLOSSOM FESTIVAL" Mark are attached hereto as *Exhibit B*.

30.     Defendant is using the Mark in connection with products that are closely related to products NCBF advertises and sells in connection with the National Cherry Blossom Festival.

Upon information and belief, Defendant offers its products for sale to at least some of the same customers that purchase NCBF-sponsored or licensed products.

31.    Defendant's infringing use of the Mark creates the false impression that Defendant's products are licensed, sponsored or endorsed by, or otherwise affiliated with, NCBF and the National Cherry Blossom Festival.

32.    Upon information and belief, Defendant had knowledge of NCBF's rights to the Mark before offering any of the Infringing Products for sale. Accordingly, Defendant's actions were, and are, willful.

33.    On or about July 12, 2016, NCBF sent Defendant a letter demanding that Defendant cease and desist its unlawful use of the Mark. A true and correct copy of NCBF's demand letter to Defendant is attached hereto as *Exhibit C*. Defendant failed to respond to NCBF's initial letter, compelling NCBF to send a second notice to Defendant on or about July 19, 2016. A true and correct copy of NCBF's second notice is attached hereto as *Exhibit D*.

34.    On or about July 19, 2016, Defendant, through its counsel, responded to NCBF's demand letters and represented that Defendant would not cease its use of the Mark, despite Defendant's knowledge of NCBF's prior rights in the Mark. A true and correct copy of Defendant's counsel's response is attached hereto as *Exhibit E*.

35.    NCBF sent a third notice to Defendant on or about July 21, 2016, again demanding that Defendant cease and desist its unauthorized use of the Mark. A true and correct copy of NCBF's July 21, 2016 letter is attached hereto as *Exhibit F*.

36.    In response, Defendant's counsel sent a second letter to NCBF dated July 25, 2016. In this letter, Defendant's counsel stated that Defendant would remove the Mark from its products. A true and correct copy of Defendant's July 25, 2016 letter is attached hereto as *Exhibit G*.

37.     Despite NCBF's clear objections to Defendant's unauthorized use of the Mark and Defendant's stated intent to stop using the Mark, Defendant continues to market, sell and distribute its Infringing Products bearing the Mark.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT – 15 USC § 1114(1)(a)**

38.     NCBF repeats and realleges the paragraphs above as though fully set forth herein.

39.     Defendant has used, and continues to use, the Mark in connection with the advertising, sale and distribution of certain of its products to the general public and to Defendant's distributors in such a manner as to create a likelihood of confusion, mistake or deception among the public.

40.     Defendant's unlawful acts have damaged and impaired NCBF's goodwill associated with the Mark, which has caused and will continue to cause NCBF irreparable damage should Defendant's infringement be allowed to continue.

41.     Upon information and belief, Defendant's trademark infringement will continue unless enjoined by this Court.

42.     Defendant's acts of trademark infringement have caused NCBF damage, the amount of which has not yet been determined. Pursuant to 15 U.S.C. § 1117, NCBF is entitled to its actual damages and costs, Defendant's profits realized as a result of Defendant's infringement, and such additional relief as this Court deems appropriate.

43.     Because of the willful nature of Defendant's trademark infringement, NCBF is entitled to an award of treble damages pursuant to 15 U.S.C. § 1117 and the destruction of Defendant's Infringing Products under 15 U.S.C. § 1118.

## COUNT II
### FEDERAL FALSE DESIGNATION OF ORIGIN – 15 USC § 1125(a)

44.     NCBF repeats and realleges the paragraphs above as though fully set forth herein.

45.     Defendant's actions as alleged herein constitute a false designation of origin and a false representation as to the source of Defendant's products in violation of 15 U.S.C. 1125(a)(1)(A), so that the purchasing public, distributors and others may mistakenly believe that Defendant's products are licensed or sponsored by, or otherwise affiliated with, NCBF and/or the National Cherry Blossom Festival.

46.     Defendant's unlawful acts have caused NCBF to suffer damage to its Mark, business reputation and goodwill.

47.     Upon information and belief, Defendant's trademark infringement will continue unless enjoined by this Court.

48.     Defendant's acts of trademark infringement have caused NCBF damage, the amount of which has not yet been determined. Pursuant to 15 U.S.C. § 1117, NCBF is entitled to its actual damages and costs, Defendant's profits realized as a result of Defendant's infringement, and such additional relief as this Court deems appropriate.

49.     Because of the willful nature of Defendant's trademark infringement, NCBF is entitled to an award of treble damages pursuant to 15 U.S.C. § 1117 and the destruction of Defendant's Infringing Products under 15 U.S.C. § 1118.  NCBF is also entitled to recover its attorneys' fees, cost and expenses pursuant to 15 U.S.C. § 1117.

## COUNT III
### FEDERAL TRADEMARK DILUTION – 15 U.S.C. § 1125(c)

50.     NCBF repeats and realleges the paragraphs above as though fully set forth herein.

51.     NCBF has used the Mark to identify and promote its annual National Cherry Blossom Festival and related products for many years prior to Defendant's unauthorized use.

52.     The Mark is famous and distinctive within the meaning of 15 U.S.C. §§1125(c)(1) and 1127.

53.     Defendant's unauthorized use of the Mark is likely to dilute the distinctive quality of NCBF's Mark in violation of 15 U.S.C. § 1125(c).

54.     Defendant's unlawful acts alleged herein have caused great and irreparable harm to NCBF's Mark, goodwill and reputation.

55.     Pursuant to 15 U.S.C. § 1117, NCBF is further entitled to its actual damages and costs, as well as Defendant's profits realized as a result of Defendant's unlawful acts.

56.     Because of the willful nature of Defendant's trademark infringement, NCBF is entitled to an award of treble damages pursuant to 15 U.S.C. § 1117 and the destruction of Defendant's Infringing Products under 15 U.S.C. § 1118.  NCBF is also entitled to recover its attorneys' fees, cost and expenses pursuant to 15 U.S.C. § 1117.

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT

57.     NCBF repeats and realleges the paragraphs above as though fully set forth herein.

58.     NCBF has certain common law rights in the mark "NATIONAL CHERRY BLOSSOM FESTIVAL," having established long, continuous and exclusive since at least 1985. As a result, the Mark has obtained significant secondary meaning in the minds of the general public.

59.     Defendant has used and continues to use the Mark in connection with the unauthorized advertising, sale and distribution of the Infringing Products in such a manner as to create a likelihood of confusion, mistake and deception as to the source or origin of Defendant's Infringing Products.  Moreover, Defendant's advertisement, sale and distribution of the

Infringing Products enables Defendant to deceive the public that the Infringing Products originate from, or are sponsored or approved by, or are affiliated or connected with, NCBF.

60.     Defendant's unlawful acts as alleged herein constitute trademark infringement in violation of the common law.

61.     Upon information and belief, Defendant has made and will make substantial profits and gains as a result of its unlawful acts.

62.     Defendant's unlawful acts have caused NCBF irreparable damage, for which NCBF has no adequate remedy at law.

63.     NCBF is further entitled to recover from Defendant the profits Defendant has realized as a result of Defendant's wrongful acts.

64.     Upon information and belief, Defendant intends to continue its willfully infringing acts unless restrained by this Court.  Accordingly, NCBF is entitled to an injunction restraining Defendant from engaging in further use of the Mark.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff NCBF respectfully requests that this Court:

1.     Enter judgment in its favor on all counts;

2.     Find that Defendant Rifle's conduct has been willful;

3.     Award damages to fully compensate NCBF for the damages it suffered as a result of the above referenced acts, as well as enhanced damages for willful misconduct;

4.     Award attorneys' fees and costs to NCBF;

5.     Enjoin Defendant, as well as its agents, officers, directors, employees, successors and assigns, and all others in privity or acting in concert with them, from using the Mark; and

6.     Such other relief as this Court deems just and proper.

## REQUEST FOR JURY TRIAL

NCBF respectfully requests that his matter be tried before a jury.

Respectfully submitted,

**NATIONAL CHERRY BLOSSOM FESTIVAL, INC.**

Steven E. Tiller
WHITEFORD, TAYLOR & PRESTON, LLP
stiller@wtplaw.com
7 Saint Paul Street
Baltimore, MD 21202-1626
Phone: 410.347.9425
Fax: 410.223.4325

*Counsel for*
*National Cherry Blossom Festival, Inc.*